## CHAMPION SPARK PLUG CO. v. REICH.
### No. 2979.

District Court, W. D. Missouri, W. D.
Sept. 24, 1938.

Arthur C. Brown, of Kansas City, Mo., for plaintiff.

Charles H. Thompson and Johnson, Garnett & Quinn, all of Kansas City, Mo., for defendant.

REEVES, District Judge.

The questions here presented for determination involve the proper interpretation of facts rather than a decision on controverted facts.

The plaintiff seeks a preliminary injunction against the defendant to prevent alleged unfair competition as well as infringements of trade-marks.

It is admitted in effect that the plaintiff is engaged in the manufacture of spark plug's, a device employed in the operation of automobiles, and that it owns and enjoys the benefits of a trade-name and a trade-mark on its said product. Moreover, it appears collaterally that it is the owner of divers patents appertaining to its device. Furthermore, it has been engaged in the manufacture of its device for many years and currently supplies many automobile manufacturers with its spark plug or device and sells to dealers vast quantities for replacement purposes. The validity of its patents, the validity of its trade-marks, and its extensive good will is not put in issue. It complains of the defendant, who is engaged in acquiring used and discarded devices or spark plugs of the plaintiff, that after cleaning and repairing them, and after restoring a degree of efficiency to the devices, defendant sells, or causes them to be sold, to dealers and others under circumstances which are deceptive. Consumers, it is alleged, are made to believe that such devices are either original and new merchandise, as sold by the plaintiff, or that the devices have been reconditioned and restored for further use after having once been used.

The defendant on his part substantially admits that he is in the business of cleaning and repairing used and discarded spark-plugs, whether manufactured by the plaintiff or other manufacturers. It is stated by him that only those spark plugs are cleaned and repaired and then offered for

sale to the public which have an obvious utility and are capable of further efficient use in the operation of automobiles. He denies that he has practiced deception, and, both by answer and brief, as well as in open court, offers so to handle plaintiff's previously used spark plugs as wholly to inform the public, or that portion of the public desiring to use said spark plugs, of all the facts and circumstances, so that the public could not and would not be deceived.

The evidence, mainly given by affidavits, tends to show that the defendant is engaged in purchasing used, abandoned and discarded spark plugs; that such spark plugs become defective from the heavy and hard use and wear to which they are subjected, and that the use is of such nature as to wear away the electrodes and insulators and other serviceable parts until the device ceases to have the distinctive mechanical and functional elements characterizing a new device. It is considered by the plaintiff that, when such a state or stage of wear is reached, the device no longer smoothly functions as contemplated by the manufacturer and is subject to abandonment and disuse.

Evidence on both sides showed that, whereas a spark plug would continue to function even after such wearing away of the parts, nevertheless it would not function in the smooth and perfect way of a new device. It was in evidence that such devices would maintain their original mechanical and functional activities unimpaired during their use for approximately ten thousand miles.

The defendant established that he was careful in the acquisition of used spark plugs, and that he endeavored to prepare for future use only those devices which, after careful inspection, disclosed that they were still serviceable. It did not appear that he did in fact recondition such devices.

As aptly stated by his counsel in his brief: "It will be established at the final hearing upon the merits that the process of reconditioning is a mere cleaning of the plug." This fact was established in the preliminary hearing for an injunction. The evidence showed that the spark plugs were cleaned by the defendant, and that, in the process of cleaning, much of the parts was cut away and the electrodes readjusted. Thus it was made to appear that, by the wear and tear and by the cleaning process,

certain patented features of the plaintiff's device were completely eliminated. This pertained to the parallel faces of the electrodes and the skirt or semi-petticoat of the plugs at the firing end.

Other facts as they may become pertinent will be stated in the course of this memorandum opinion.

1. Section 96, Title 15, U.S.C.A., pertains to the general subject of trade-mark infringement. Applicable portions of the Section are: "Any person who shall, without the consent of the owner thereof, reproduce, counterfeit, copy, or colorably imitate any such trade-mark and affix the same to merchandise of substantially the same descriptive properties as those set forth in the registration, or to labels, signs, prints, packages, wrappers, or receptacles intended to be used upon or in connection with the sale of merchandise of substantially the same descriptive properties as those set forth in such registration, and shall use, or shall have used, such reproduction, counterfeit, copy, or colorable imitation in commerce among the several States * * * shall be liable to an action for damages therefor at the suit of the owner thereof."

It was proved in this case that the defendant extensively offered for sale spark plugs manufactured by the plaintiff, and with its name and trade-mark upon them, and which spark plugs defendant said had been reconditioned. The meaning of the word "Recondition", as a transitive verb, is as follows: To restore (something worn) to sound condition by readjustments and replacement of parts; to renovate, as, *reconditioned* automobile.

According to the testimony and the frank statement of counsel for the defendant, the spark plugs prepared for further use were not in fact reconditioned. Apparently, a spark plug of plaintiff's design and manufacture, to be reconditioned, would be to restore it to its original condition, so as to have all of the patented mechanical and functional elements as in case of a new device. Admittedly, this was not done. The electrodes, in the so-called reconditioned device, did not have parallel faces, as characterized plaintiff's device. There was some evidence that this was inconsequential, but, nevertheless, the plaintiff is the owner of a patent covering this precise arrangement, and in its patent there is a recital that a spark with greater in-

tensity resulted from parallel faces of the electrode, and, moreover, that such mechanical arrangements prolonged the useful life of the device.

The court cannot disregard the recitals of an unchallenged patent. It affords all of the presumptions of utility superior to that where the electrodes oppose each other with either mere points or irregular faces. Furthermore, the shell part at the firing end of the device was cut away so that, in the so-called reconditioned device, neither the symmetry, nor the dimensions (having functional values) were present as in the original device. The spark plug thus offered by the defendant was not a reconditioned spark plug. It was cleaned, and such readjustments were made as to make it function. It was not restored so as to possess the same descriptive properties of plaintiff's device.

The name of the plaintiff, with its trademark, was left on the so-called reconditioned spark plug. After defendant had prepared his once used devices for sale, he caused them to be put on display cards for sales purposes. These cards readily gave the impression that the article was plaintiff's device. Moreover, the cartons in which they were packaged had plaintiff's trade-name and trade-mark printed so conspicuously as to give the impression that it was in fact its device.

Upon the evidence in the case it is obvious that the defendant was not only guilty of unfair competition, but that he also had infringed plaintiff's trade-name and trade-mark.

2. The defendant rightly contends that he may properly acquire by purchase, or otherwise, used and discarded spark plugs, and, that, when so acquired, he has a right to repair, and sell them to the public for further use in the operation of automobiles. Clearly the plaintiff has no such right arising from its trade-name, trade-marks, and patent rights, as to prevent the sale of its discarded and abandoned devices after the same have been cleaned and repaired.

The court is therefore confronted with a situation where both the litigants have rights with respect to the device under consideration. Plaintiff is entitled to have its trade-name, trade-mark and patents protected against unfair competition and against infringement. The defendant, on the other hand, has a right to acquire property of the kind involved in this dispute, prepare such property for resale and further use, and then sell it to the public.

3. The law takes into account a situation such as this, and makes provisions for each of the parties to carry on its or his respective business enterprise in such way as not to impinge upon the rights of the other. This can be accomplished by the defendant giving effective notice to the public that his used, cleaned and repaired spark plugs are not new Champion plugs. In fact, he should go further than that; the name of the plaintiff should not be used at all, save collaterally. The so-called reconditioned spark plug offered by the defendant is not in fact plaintiff's device. By use, it has lost the important efficient qualities and parts characterizing and belonging to plaintiff's device. The plaintiff, according to the testimony, is prideful, both of the form and the substance of its spark plugs. By long use the form is lost on the discarded spark plugs. The substance, alleged to be of superior quality, remains, and, as to that, the defendant should be permitted to give credit to the plaintiff only in a collateral way as to the material in the device offered by the defendant. The displays, as they were offered in court, are clearly deceptive and the cartons were deceptive.

It is contended by the defendant that it would be impossible for him to remove plaintiff's trade-name without materially damaging his repaired device. This should not be required, if otherwise the defendant can dispose of his spark plugs without deceiving the public. The law would forbid him from offering to the public his repaired devices under circumstances that would deceive the public.

Since the original device, cleaned and repaired for resale by the defendant, has lost its original character and excellence, the burden devolves upon the defendant to make it appear that the goods offered by him are his own, and not those of the plaintiff or its predecessors. Under no circumstances should he use the name "Champion" without giving information to the public that the devices are not those of the plaintiff.

It may be that at the trial on the merits, the defendant may be able to outline a method of handling the device without trespassing upon the rights of plaintiff.

At the present time, in view of the evidence as to the manner in which defendant has handled for reselling the sec-

ond-hand devices of plaintiff, a preliminary injunction should be granted. For this purpose, the plaintiff's counsel will present an appropriate order.